IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADOBE SYSTEMS INCORPORATED, | No. C 10-03564 SI |
| Plaintiff, | **ORDER GRANTING MOTION TO DISMISS COUNTERCLAIMS** |
| v. | |
| RENEE NORWOOD, | |
| Defendant.        / | |
| AND RELATED COUNTER-CLAIMS.        / | |

On February 25, 2011, the Court heard argument on the motion by plaintiff/counter-defendant Adobe Systems Incorporated ("Adobe") and third-party defendant Software & Information Industry Association ("SIIA") to dismiss Counts One, Two, Three, Four, Eight, Nine, and Ten of the counter-claims filed by defendant/counter-claimant Renee Norwood. Having considered the arguments of counsel and the papers submitted, the Court hereby GRANTS the motion to dismiss counterclaims, with leave to amend Counts Three, Eight, Nine, and Ten. Count Four may be amended to support a declaratory judgment against Adobe, but it is dismissed with prejudice as to any claim for judgment against SIIA or damages generally.

**BACKGROUND**

Adobe filed this copyright and trademark infringement case on August 13, 2010, alleging that Renee Norwood engaged in "systematic, unauthorized copying and distribution of Adobe's software

products through sales on the eBay online auction site."[1]  Compl. at ¶ 1.  Norwood filed an answer on November 17, 2010 and on that same date filed ten counterclaims against Adobe and the Software & Information Industry Association ("SIAA"), a non-profit trade association, alleging three antitrust and unfair competition violations, misuse of copyright, defamation, placing defendant before the public in a false light, business disparagement, aiding and abetting, civil conspiracy, and that SIAA was an alter ego and/or instrumentality of Adobe.  Adobe responded on January 7, 2011 and moves to dismiss all of the claims except for the defamation, false light, and business disparagement claims.

   Norwood claims that Adobe and SIAA "made a concerted effort to stop resale distribution altogether by [] instituting . . . a coordinated campaign of litigation against small individual re-sellers who sell computer software on the secondary market -- computer software lawfully purchased by these small computer software re-sellers," which Norwood argues violates the first sale doctrine.  Counter-claims, at ¶¶ 11, 13.  Norwood claims that Adobe and SIIA "have joined together to embark on a scheme to cartelize [the secondary market for computer software] and its [financial] promise for themselves. Their goal is simple: to destroy the secondary market for computer software since they no longer owned or controlled such software products."  Counterclaims, at ¶ 12.  To accomplish this goal, Norwood claims that Adobe and SIAA are "specifically targeting small, independent resellers" by filing lawsuits and Digital Millennium Copyright Act ("DMCA") take-down notices in order to "intimidate, harass and ultimately eliminate from competition these small re-sellers."  *Id.* at ¶¶ 13-14.  Norwood claims that Adobe and SIIA intentionally focus on small resellers with limited financial means in order to avoid having to litigate.  They "know that their claims of infringement are not valid given the critical limitation on copyright, embodied in the First Sale Doctrine."  *Id.* at ¶ 17.

   Norwood further claims that SIIA issued a press release on October 6, 2010 which contained defamatory statements accusing Norwood of piracy.  Norwood alleges that the statements were made without any evidence to support them and have caused her to suffer "severe emotional, psychological, and medical distress and damages . . . as she experienced the destruction of her reputation, identity,

---

[1] The claim for trademark infringement arises because Adobe alleges that Norwood used images similar or identical to Adobe's trademarks to confuse consumers and to promote their products. Compl., at ¶ 16.

2

sense of self-worth, and lost business and customers." *Id.* at ¶¶ 28-40. Adobe does not move to dismiss the defamation, false light, and disparagement claims, but requests that the remainder of the claims be dismissed with prejudice.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984).

In answering this question, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Even if the face of the pleadings suggests that the chance of recovery is remote, the Court must allow the plaintiff to develop the case at this stage of the proceedings. *See United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. Federal Rule of Civil Procedure 15 governs amendment of the pleadings. It states that if a responsive pleading has already been filed, the party seeking amendment may amend the party's pleading only by leave of court or by written consent of the adverse party and that leave shall be freely given when justice so requires. Fed. R. Civ. P. 15(a). This rule reflects an underlying policy that disputes should be determined on their merits, and not on the technicalities of pleading rules. *See Foman v. Davis*, 371 U.S. 178, 181-82 (1962). The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citation and internal quotation marks omitted). Accordingly, the Court must be generous in granting leave to amend.

**DISCUSSION**

**I.     Antitrust and unfair competition counterclaims**

Norwood's first, second, and third counterclaims are: (1) conspiracy in restraint of trade in violation of federal antitrust law, (2) violation of California antitrust law, and (3) violation of the California Unfair Competition Act by restraint of trade. Adobe moves to strike these counterclaims, arguing that there can be no antitrust conspiracy between Adobe and SIAA, because SIAA is Adobe's agent. In making these arguments, Adobe characterizes Norwood's first three counterclaims as antitrust claims. Norwood argues that the third counterclaim made pursuant to the California Unfair Competition Act, Business and Professions Code Section 17200, is broader than a simple antitrust claim, despite the fact that the primary allegation in the counterclaim is that "Counter-Defendants conspired to and did restrain trade *in ways that violated federal and state antitrust laws*, and/or that violate the policy and spirit of such laws and threatened their incipient violation." Counterclaims, at ¶ 47 (emphasis added). While Norwood attempts to clarify the pleading by explaining that the uncontested defamation, false light, or disparagement claims could support the unfair competition claim, the third counterclaim, as written, only addresses an antitrust claim.

Adobe argues that the antitrust conspiracy claims should be dismissed because SIAA is its agent and therefore, cannot conspire with Adobe. The Ninth Circuit has held that "[a] corporation cannot conspire with its officers or agents to violate the antitrust laws." *Chapman v. Rudd Paint & Varnish Co.*, 409 F.2d 635, 643 n.9 (9th Cir. 1969). Norwood does not provide contradictory case law, but argues that "[n]either SIIA nor Adobe have offered any evidence of their relationship whatsoever" and that "Norwood offers indisputable evidence that SIIA acts on its own behalf, as well as many other of its clients." Opposition to Motion to Dismiss Counterclaims ("Oppo."), 6. However, Norwood's own pleadings allege that the relationship between Adobe and SIIA is that of a principal and its agent. *See* Counterclaims, at ¶¶ 3, 13-14 ("SIIA has acted as Adobe's agent"; "SIIA acting on behalf of its association member, Adobe"; "actions of Adobe and its agent, SIIA").

Norwood attempts to offer evidence accompanying her opposition to the motion to dismiss. This evidence, in the form of two declarations from Norwood and her attorney Mike Rodenbaugh, is clearly outside the scope of Norwood's pleadings and must be excluded from consideration in deciding whether

4

to dismiss the counterclaims. The declarations are discussed here because they provide guidance in deciding whether to grant Norwood leave to amend – and they do not help Norwood. Norwood alleges that "[t]he SIIA makes third party demands and has published many press releases about copyright enforcement in its own name," and also that "the SIIA profits from the online resale of Adobe's software as well as the software of its other Premium Resellers, through operation of its Premium Reseller Program and presumably through revenue share from direct sales." *Id.* at 6-7 (citing Mike Rodenbaugh Decl., ¶¶ 3-4). Norwood's allegation that the SIIA profits from the online resale of software is offered to show that SIIA is "a direct competitor to eBay and Amazon Marketplace, and by extension Ms. Norwood." *Id.* The fact that SIIA acts on its own behalf in issuing press releases and demands does not preclude it from being Adobe's agent with regard to the events relevant to the antitrust claims. Further, Norwood's allegations of SIIA profiting from the online resale of Adobe's software seems to point toward an agency relationship between SIIA and Adobe rather than away from it.

Norwood also offers a printout from SIIA's website that provides detail on SIIA's "Premier Reseller Program" in which "SIIA recognizes outstanding software resellers and promotes them to potential software buyers." Rodenbaugh Decl., Ex. 4. The website also contains a link to an Adobe sales website. *Id.* It does not contain any information regarding any way in which SIIA profits from the "Premium Reseller" program. Norwood's assumptions that SIIA profits from the program and speculations about presumable revenue sharing are not supported by the information on SIIA's website.

The Court GRANTS Adobe's motion to dismiss Counts One and Two, with prejudice.[2] As for Count Three, the California unfair competition claim, Norwood argues that it can be supported by other causes of action rather than antitrust, including the uncontested defamation, business disparagement, and/or false light claims.[3] Therefore, the Court GRANTS Adobe's motion to dismiss Count Three for

---

[2] Norwood also names "Does 1-10" in her complaint, defining them as "principals, supervisory employees, employees, agents, or associates of Adobe and/or SIIA." As such, the doe defendants could not be named as conspirators with Adobe or SIIA. *Id.* at ¶ 4.

[3] At the hearing, Adobe argued that a state-law unfair competition claim predicated on copyright misuse would be preempted by the federal Copyright Act, but did not brief this matter. Norwood did not articulate such a basis for her unfair competition claim and the Court will address preemption, if necessary, when Norwood submits her amended counterclaims.

5

the reasons discussed above, but GRANTS Norwood leave to amend.[4]

## II.     Misuse of copyright

Norwood's fourth counterclaim is for misuse of copyright. It is based primarily on the allegation that Adobe's actions are in violation of the first sale doctrine. Adobe argues that misuse of copyright is a defense and cannot support a claim for damages or declaratory judgment. Adobe also argues that Norwood fails to state a misuse of copyright claim because she is a licensee and not a purchaser of the copyrighted work.

### A.     Copyright misuse as a defense

Copyright misuse, which is nearly always regarded as a defense, "forbids a copyright holder from securing an exclusive right or limited monopoly not granted by the Copyright Office" by preventing "copyright holders from leveraging their limited monopoly to allow them control of areas outside the monopoly." *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001) (internal quotations omitted). Here, Norwood alleges that Adobe and SIIA have attempted to control the resale of Adobe's software products beyond their first sale in contravention of the first sale doctrine. Counterclaims, at ¶ 53.

Many district courts have held that copyright misuse does not support a claim for damages. *Adobe Systems, Inc. v. Kornrumpf*, No. C 10-02769 CW, 2011 WL 181375 at *2 (N.D. Cal. Jan. 19, 2011); *Ticketmaster L.L.C. v. RMG Techs., Inc.*, 536 F. Supp. 2d 1191, 1198 (C.D. Cal. 2008); *Online Policy Group v. Diebold Inc.,* 337 F. Supp. 2d 1195, 1198 n.4 (N.D. Cal. 2004). As Norwood identifies no legal authority suggesting otherwise and amendment would not cure the deficiency, the Court dismisses with prejudice Norwood's request for damages for copyright misuse.

Norwood does identify a case that suggests that copyright misuse may be asserted as a counterclaim for declaratory judgment. In *Apple Inc. v. Psystar Corp.*, No. C 08-03251 WHA, 2009 WL 303046, *2 (N.D. Cal. 2009), the court concluded Psystar's copyright misuse counterclaim was

---

[4] The request for judicial notice filed by Adobe and SIIA is DENIED as moot.

6

proper because Apple Inc. asserted copyright claims against Psystar, and because "Psystar's interest in the issue may not be limited solely to the defense of those claims." Norwood argues that she has a "legitimate interest in establishing misuse of Adobe's copyrights, to clarify that in fact her resales of sealed, boxed, authorized software - each copy individually sold and authenticated by Adobe - are lawful," because Adobe is acting in violation of the first sale doctrine and, ultimately, that "Adobe and SIIA deserve the requisite penalty for misuse of the Adobe copyrights." Oppo., at pgs. 9-10.

The Court agrees with *Psystar* that copyright misuse can, in some cases, be a claim for declaratory relief. However, as *Adobe Systems, Inc. v. Kornrumpf* makes clear, such a claim can only survive where the claimant alleges facts showing the applicability of the first sale doctrine. 2011 WL 181375, at *2.

### B. First sale doctrine

The first sale doctrine "permits one who has acquired ownership of a copy to dispose of that copy without the permission of the copyright owner." *UMG Recordings, Inc. v. Augusto*, 628 F.3d 1175, 1177 (9th Cir. 2011) (citing 17 U.S.C. § 109(a)). However, the doctrine "does not apply to a person who possesses a copy of the copyrighted work without owning it, such as a licensee." *Vernor v. Autodesk, Inc.*, 621 F.3d 1102, 1107 (9th Cir. 2010) (citing 17 U.S.C. § 109(d)). "[A] software user is a licensee rather than an owner of a copy where the copyright owner (1) specifies that the user is granted a license; (2) significantly restricts the user's ability to transfer the software; and (3) imposes notable use restrictions." *Id.* at 1111.

Norwood bears the burden of alleging facts sufficient to support her cause of action. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In order to support her copyright misuse claim and avail herself of the first sale doctrine, Norwood must plead facts that distinguish her case from *Vernor*. *See Kornrumpf*, 2011 WL 181375, at *4 (claimant must "plead . . . facts to suggest that [she] owned . . . particular copies of Adobe software that [she] resold" and "allege that Adobe . . . sold, gave away or transferred title to the particular copies of the software at issue"). Norwood only makes conclusory

7

allegations that her purchase of the software from "other third party distributors" was "legitimate."[5] *See*, *e.g.*, Counterclaims, at ¶ 11. Norwood fails to plead facts to suggest that title was transferred to her, nor does she provide information regarding the terms under which the third party distributors obtained the software. *See Kornrumpf*, 2011 WL 181375, at *4 (claimant must establish "under what terms these distributors obtained the copies").

Further, *Kornrumpf* concluded that naming SIIA as a counter-defendant for the copyright misuse claim was inappropriate, given that SIIA did not own any copyright in question. *Id.*, at *3. The same is true here; SIIA is Adobe's agent and does not own any relevant copyright. As in *Kornrumpf*, any claim that SIIA engaged in copyright misuse is properly dismissed.

For these reasons and those above, Adobe's motion to dismiss Count Four of the counterclaims is GRANTED. Norwood has leave to amend to show grounds for bringing a claim against Adobe only, for declaratory judgment only. In any amended pleading, Norwood must plead facts showing that title of the software in question was properly transferred to her in order to sustain her copyright misuse claim against Adobe.

## III. Failure to state separate causes of action

Norwood's eighth, ninth, and tenth counterclaims are for aiding and abetting, civil conspiracy, and alter ego/instrumentality respectively. Adobe argues that counterclaims eight through ten are not independent causes of action, but derivative liability legal doctrines that are "best understood as doctrines applied to the other Counterclaims." Mot. to Dismiss, at pg. 9. "Upon reflection, Norwood generally agrees and thus would like the opportunity to amend the Counterclaims to clarify that, and to better clarify SIIA's independent actions and liabilities." Oppo., at pg. 13. Therefore, the Court GRANTS Adobe's motion to dismiss Counts Eight through Ten of the counterclaims, with leave to

---

[5] Norwood attempts to supplement her claim by offering a declaration that was filed with her opposition. Adobe argues that this declaration should not be considered because it is outside the scope of the initial pleading. However, the declaration only offers conclusory allegations of the legitimacy of Norwood's purchase, without giving further detail as to whether title was transferred. *See* Norwood Decl., ¶¶ 2-3. Norwood's allegation that "[t]he third party distributor has provided written assurance that the copies are resellable" still do not provide information about the status of the title of the software as they do not explain the circumstances under which the "third party distributor" obtained the software. *Id.* at ¶ 3.

amend, provided that the amended pleadings are not inconsistent with anything in this order.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS Adobe's motion to dismiss Counts One, Two, Three, Four, Eight, Nine and Ten of the Counterclaims (Docket No. 26). Counts One and Two are dismissed with prejudice. Norwood has leave to amend the remaining claims, except for her damages request in Count Four by **March 18, 2011**.

**IT IS SO ORDERED.**

Dated: March 8, 2011

SUSAN ILLSTON
United States District Judge