1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ADOBE SYSTEMS INCORPORATED,

        Plaintiff,

  v.

RENEE NORWOOD,

        Defendant.
_____/

AND RELATED COUNTER- AND THIRD-
PARTY CLAIMS
_____/

No. C 10-03564 SI

**ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S
COPYRIGHT MISUSE
COUNTERCLAIM AND DENYING
DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S UCL CLAIM**

Plaintiff/counter-defendant Adobe Systems Incorporated (Adobe) and third-party defendant Software & Information Industry Association's (SIIA) motion for partial dismissal of the amended counterclaims of defendant/counterclaimant Renee Norwood, now appearing pro se, is currently scheduled for hearing on July 8, 2011.  Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and hereby VACATES the hearing.  Having considered the papers submitted, and for good cause shown, the Court GRANTS Adobe's motion to dismiss Count One of the amended counterclaims, with prejudice.  The Court DENIES the motion to dismiss Count Five of the amended counterclaims to the extent it is supported by Norwood's defamation, false light, and/or business disparagement claims.  Count Five of the amended counterclaims is dismissed with prejudice to the extent it is based on an alleged violation of the federal Copyright Act or alleged anticompetitive acts.

**BACKGROUND**

Adobe filed this copyright and trademark infringement case on August 13, 2010, alleging that Renee Norwood engaged in "systematic, unauthorized copying and distribution of Adobe's software products through sales on the eBay online auction site." Compl. at ¶ 1.  Norwood filed an answer on November 17, 2010 and on that same date filed ten counterclaims against Adobe and third-party defendant SIIA, a non-profit trade association, alleging three antitrust and unfair competition violations, misuse of copyright, defamation, placing defendant before the public in a false light, business disparagement, aiding and abetting, civil conspiracy, and that SIIA was an alter ego and/or instrumentality of Adobe.  Adobe responded on January 7, 2011 and moved to dismiss all of the counterclaims except for the defamation, false light, and business disparagement claims.

On March 8, 2011, the Court dismissed Count One (conspiracy in restraint of trade in violation of federal antitrust law) and Count Two (violation of California antitrust law) with prejudice.  Order Granting Motion to Dismiss Counterclaims, p. 5.  The Court granted Adobe's motion to dismiss Counts Three (violation of the California Unfair Competition Law by restraint of trade), Eight (aiding and abetting), Nine (civil conspiracy), and Ten (alter ego/instrumentality), but gave Norwood leave to amend.  Order, p. 1.  The Court dismissed with prejudice Count Four (misuse of copyright) as to any claim for judgment against SIIA or for damages generally, but gave Norwood leave to amend to support a declaratory judgment against Adobe.  Order, pp. 1, 8.

On March 18, 2011, Norwood filed amended counterclaims.  Norwood claims that Adobe and SIIA "made a concerted effort to stop resale distribution altogether by instituting a coordinated campaign of federal litigation against small individual resellers who sell computer software on the secondary market – computer software lawfully purchased by these small computer software resellers and their upstream suppliers," which Norwood argues violates the first sale doctrine.  Amended Counterclaims at ¶ 38.  Norwood claims that Adobe and SIIA "have joined together to embark on a scheme to cartelize [the secondary market for computer software] and its financial promise for themselves.  Their goal is simple: to destroy the secondary market for their computer software, since they no longer owned or controlled those copies of their software products." *Id.* at ¶ 39.     To accomplish this goal, Norwood claims that Adobe and SIIA are "specifically targeting small,

**United States District Court**
For the Northern District of California

independent re-sellers of Adobe products" by filing lawsuits and Digital Millennium Copyright Act ("DMCA") take-down notices in order to "intimidate, harass and ultimately eliminate from competition these small resellers . . . ." *Id.* at ¶¶ 40-41.   Norwood claims that Adobe and SIIA intentionally focus on small resellers with limited financial means in order to avoid having to litigate.  They "know that their claims of infringement are not valid given the critical limitation on copyright, embodied in the First Sale Doctrine . . . . " *Id.* at ¶ 42.

Norwood claims that "Counter-Defendants aided and assisted one another in perpetrating the wrongful acts" alleged above. *Id.* at ¶ 48.  "Specifically, Counter-Defendants conspired and agreed to unreasonably restrain trade in and to control and dominate the market for Adobe software products" and "took acts in furtherance of their combination and conspiracy, as alleged herein, that were intended to destroy the secondary market for Adobe software products and were intended to and did injure Norwood by bringing the instant lawsuit against her." *Id.*

Norwood further claims that SIIA issued a press release on October 6, 2010, which contained defamatory statements accusing Norwood of piracy.  Norwood alleges that the statements were made without any evidence to support them and have caused her to suffer "severe emotional, psychological, and medical distress and damages . . . as she experienced the destruction of her reputation, identity, sense of self-worth, and lost business and customers." *Id.* at ¶¶ 49-61.

Norwood claims that the counter-defendants "have acted in conspiracy with one another, each tacitly and/or expressly participating in a common plan to destroy the legal, secondary market for Adobe software, and in the common plan to destroy [her] business reputation." *Id.* at ¶ 62.

On May 2, 2011 Norwood's attorney, Michael L. Rodenbaugh, moved to withdraw as counsel. The Court granted Rodenbaugh's motion to withdraw as counsel on June 3, 2011, and extended the mediation deadline by 60 days.  The Court also ordered Mr. Rodenbaugh to inform Norwood of the Court's ruling by mail and e-mail, and inform Norwood of the pending motion to dismiss and associated deadlines.

Norwood has not asked the Court for a continuance nor submitted a response to Adobe's partial motion to dismiss the amended counterclaims.

United States District Court
For the Northern District of California

1

**LEGAL STANDARD**

2          Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it

3   fails to state a claim upon which relief can be granted.  The question presented by a motion to dismiss

4   is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer

5   evidence in support of the claim.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other*

6   *grounds by Davis v. Scherer*, 468 U.S. 183 (1984).

7          In answering this question, the Court must assume that the plaintiff's allegations are true and

8   must draw all reasonable inferences in the plaintiff's favor.  *See Usher v. City of Los Angeles*, 828 F.2d

9   556, 561 (9th Cir. 1987).  Even if the face of the pleadings suggests that the chance of recovery is

10  remote, the Court must allow the plaintiff to develop the case at this stage of the proceedings.  *See*

11  *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

12         If the Court dismisses the complaint, it must then decide whether to grant leave to amend.

13  Federal Rule of Civil Procedure 15 governs amendment of the pleadings.  It states that if a responsive

14  pleading has already been filed, the party seeking amendment may amend the party's pleading only by

15  leave of court or by written consent of the adverse party and that leave shall be freely given when justice

16  so requires.  Fed. R. Civ. P. 15(a).  This rule reflects an underlying policy that disputes should be

17  determined on their merits, and not on the technicalities of pleading rules.  *See Foman v. Davis*, 371

18  U.S. 178, 181-82 (1962).  The Ninth Circuit has "repeatedly held that a district court should grant leave

19  to amend even if no request to amend the pleading was made, unless it determines that the pleading

20  could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th

21  Cir. 2000) (citation and internal quotation marks omitted).  Accordingly, the Court must be generous

22  in granting leave to amend.

23         Generally, courts cannot consider material outside the complaint when ruling on a motion to

24  dismiss for failure to state a claim.  *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th

25  Cir. 2001).  However, material properly submitted as part of the complaint may be considered on a

26  motion to dismiss.  *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) (citing *Hal Roach Studios, Inc.*

27  *v. Richard Feiner & Co.*, 869 F.2d 1542, 1555 n. 19 (9th Cir. 1990)), *rev'd on other grounds by*

28  *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).  A document is not outside the

4

complaint if the complaint specifically refers to the document and if its authenticity is not questioned. *Id.* (citing *Townsend v. Columbia Operations*, 667 F.2d 844, 848-49 (9th Cir. 1982)).  The court may consider the full text of the document, even if the complaint quotes it only in part.  *In re. Stac Electronics Securities Litig.*, 89 F.3d 1399, 1405 n. 4 (9th Cir. 1996).

Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Where a plaintiff is proceeding pro se, the Court has an obligation to construe the pleadings liberally and to afford the plaintiff the benefit of any doubt. *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, pro se pleadings must still allege facts sufficient to allow a reviewing court to determine whether a claim has been stated. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

## DISCUSSION

### I.        Count One: Misuse of Copyright

Norwood's first amended counterclaim is for misuse of copyright.  It is based primarily on the allegation that Adobe's actions are in violation of the first sale doctrine.

#### A.        Copyright Misuse

Copyright misuse, which is nearly always regarded as a defense, "forbids a copyright holder from securing an exclusive right or limited monopoly not granted by the Copyright Office" by preventing "copyright holders from leveraging their limited monopoly to allow them control of areas outside the monopoly." *A & M Records, Inc.  v.  Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001) (internal quotation marks and alteration marks omitted).  Here, Norwood alleges that Adobe and SIIA have attempted to control the resale of Adobe's software products beyond their first sale in contravention of the first sale doctrine.  Amended Counterclaims at ¶ 35.

#### B.        First Sale Doctrine

The first sale doctrine "permits one who has acquired ownership of a copy to dispose of that copy without the permission of the copyright owner."  *UMG Recordings, Inc. v. Augusto*, 628 F.3d

United States District Court
For the Northern District of California

1175, 1177 (9th Cir. 2011) (citing 17 U.S.C. § 109(a)). However, the doctrine "does not apply to a person who possesses a copy of the copyrighted work without owning it, such as a licensee." *Vernor v. Autodesk, Inc.*, 621 F.3d 1102, 1107 (9th Cir. 2010) (citing 17 U.S.C. § 109(d)). "[A] software user is a licensee rather than an owner of a copy where the copyright owner (1) specifies that the user is granted a license; (2) significantly restricts the user's ability to transfer the software; and (3) imposes notable use restrictions." *Id.* at 1111.

### C.    Norwood's Amended Counterclaim

Many district courts have held that copyright misuse does not support a claim for damages. *Adobe Systems, Inc. v. Kornrumpf*, – F. Supp. 2d –, 2011 WL 181375, *2 (N.D. Cal. 2011); *Ticketmaster L.L.C. v. RMG Techs., Inc.*, 536 F. Supp. 2d 1191, 1198 (C.D. Cal. 2008); *Online Policy Group v. Diebold Inc.*, 337 F. Supp. 2d 1195, 1198 n.4 (N.D. Cal. 2004). As Norwood identified no legal authority suggesting otherwise, the Court dismissed with prejudice her request for damages for copyright misuse. Order p. 6. Norwood did identify a case suggesting that copyright misuse may be asserted as a counterclaim for declaratory judgment. *See Apple Inc. v. Psystar Corp.*, No. C 08-03251 WHA, 2009 WL 303046, *2 (N.D. Cal. 2009). The Court gave Norwood leave to amend her copyright misuse claim for declaratory relief against Adobe, but made clear that the claim could only survive if Norwood alleged facts showing the applicability of the first sale doctrine. Order p. 7 (citing *Adobe Systems v. Kornrumpf*, 2011 WL 181375 at *2).

Norwood bears the burden of alleging facts sufficient to support her cause of action. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To show the applicability of the first sale doctrine, the Court said that Norwood must plead facts that distinguish her case from *Vernor* in her amended complaint. Order p. 7. In *Vernor*, the court said that the first sale doctrine does not apply to one who possesses a copy of a copyrighted work without owning it, such as a licensee. *Vernor*, 621 F.3d at 1107. The Court noted that Norwood had made only conclusory allegations that her purchase of the software from "other third party distributors" was "legitimate" and that she "failed to plead facts to suggest that title was transferred to her" or "provide information regarding the terms under which the third party distributors obtained the software." Order pp. 7-8. The court said that to sustain a copyright misuse

claim against Adobe in her amended pleading, "Norwood must plead facts showing that title of the software in question was properly transferred to her."  Order p. 8.

In her amended counterclaims, Norwood attempts to demonstrate that Adobe's software distribution method constitutes a first sale under the first sale doctrine.  Norwood argues that sales of Adobe software to computer and other component hardware manufacturers who sell the software as a "'package deal'" with hardware products constitutes a first sale because ownership in the copies of the software is transferred to the hardware manufacturers.  Amended Counterclaims at ¶ 13.  Norwood claims that Adobe sells its software products to resellers under the terms of "*sales contracts*" that exclude provisions typical of end user license agreements and include provisions indicating transfer of ownership.  *Id.* at ¶ 14 (emphasis in original).  As examples of these provisions, Norwood provides that Adobe allows for no refunds or exchanges of the copies of the software and that the contracts do not place restrictions on the reseller's ability to resell the copies of the software, indicating that "Adobe relinquishes its control of the software copies."  *Id.*

Norwood also claims that copies of Adobe's CS4 software, which Norwood allegedly sold on eBay, contain no licensing restrictions on the face of the packaging or on the CDs containing the software.  Norwood acknowledges in her amended counterclaims, however, that print inside the CD case states: "'Notice to Users: This product is offered subject to your acceptance of the license agreement included with the media and to limited warranty terms.  See www.adobe.com/products/eulas for details.'"  *Id.* at ¶ 26.  When the user goes to that website, a licensing agreement is downloaded to the user's computer.  *Id.* at ¶ 27.  The agreement includes these terms:

> Adobe products are not sold; rather, copies of Adobe products . . . are licensed all the way through the distribution channel to the end user.  UNLESS YOU HAVE ANOTHER AGREEMENT DIRECTLY WITH ADOBE THAT CONTROLS AND ALTERS YOUR USE OR DISTRIBUTION OF THE ADOBE PRODUCTS, THE TERMS AND CONDITIONS OF THE APPLICABLE LICENSE AGREEMENTS BELOW APPLY TO YOU.

Amended Counterclaims Exh. B (capital letters in original).

Norwood argues that this agreement "only purports to apply to the end-user of the software,

United States District Court
For the Northern District of California

rather than any of the prior purchasers from Adobe and its customers." Amended Counterclaims at ¶ 27. The language on Adobe's website, however, which Norwood attaches to her amended counterclaims, explicitly indicates that Adobe products are "licensed all the way through the distribution channel . . . ." Amended Counterclaims Exh. B. This contradicts Norwood's allegation that the license agreements only apply to end users and not to her or her supplier. Norwood does not plead facts indicating that either she or her supplier, Bea's Hive, have another agreement directly with Adobe that would make the license agreement quoted above inapplicable to them. The amended counterclaims and the exhibits attached by Norwood make clear that her Adobe products were licensed, not sold.

Norwood does not plead facts that distinguish her case from *Vernor*. The Court GRANTS Adobe's motion to dismiss Count One of the amended counterclaims, with prejudice.

## II.     Count Five: Violation of California's Unfair Competition Law

The Court granted Norwood leave to amend her third original counterclaim, which alleged violation of the California Unfair Competition Law (UCL) by restraint of trade. The original counterclaim related her UCL claim to her antitrust claim (that "Counter-Defendants conspired to and did restrain trade in ways that violated federal and state antitrust laws, and/or that violated the policy and spirit of such laws and threatened their incipient violation") and it was dismissed. *See* Counterclaims at ¶ 47. But Norwood argued that her defamation, false light, and/or disparagement claims could support the UCL claim. *See* Order p. 4. The Court granted Norwood leave to amend her UCL claim to plead causes of action other than antitrust, including defamation, false light, and/or business disparagement.

Norwood's amended counterclaims incorporate paragraphs 1 through 100 – including her copyright misuse, defamation, false light, and business disparagement claims – into her UCL claim. Norwood alleges that the "concerted and anticompetitive acts of Counter-Defendants. . . constitute unlawful and unfair business acts and practice and unfair competition." Amended Counterclaims at ¶ 102. She alleges that counter-defendants "conspired to and did commit unlawful, unfair and fraudulent actions, generally targeted at all eBay and Amazon resellers of Adobe software, including specifically

Ms. Norwood." *Id.* In so doing, Norwood says, "Counter-defendants have also violated the U.S. Copyright Act . . . [and] have also violated specific California and/or other statutes, including statutes which prohibit defamation, false light and/or business disparagement – each of which are unlawful, unfair, or fraudulent torts." *Id.* at ¶¶ 103-04.

California's Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice." *Cel-Tech Communic'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 539 (Cal. 1999); Cal. Bus. & Prof. Code § 17200 *et seq*. "By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Id.* at 539-40 (internal quotation marks and citations omitted). The law was "'intentionally framed in its broad, sweeping language.'" *Id.* at 540 (citation omitted).

"Violation of almost any federal, state or local law may serve as the basis for a UCL claim." *Kornrumpf*, 2011 WL 181375 at *5 (citation omitted). The "unlawful" practices prohibited by section 17200 are "any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-39 (1994) (citing *People v. McKale*, 602 P.2d 731 (Cal. 1979)). Norwood attempts to ground her UCL claim in (1) her allegations that defendants committed certain anticompetitive acts; (2) her allegations of copyright misuse; and (3) her defamation, false light, and business disparagement claims. In the Court's previous Order, it dismissed alleged anticompetitive acts as a basis for Norwood's UCL claim. To the extent that her UCL claim is still based on alleged anticompetitive acts, it is dismissed. Because the Court has now dismissed Norwood's copyright misuse claim, Norwood's UCL claim is dismissed with prejudice to the extent that it is based on a violation of the federal Copyright Act. However, Norwood's UCL claim can be supported by her defamation, false light, and business disparagement claims. The Court DENIES Adobe's motion to dismiss Norwood's UCL claim to the extent that the claim is based on Norwood's defamation, false light, and business disparagement claims.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS Adobe's

motion to dismiss Count One of the amended counterclaims, with prejudice. The Court DENIES Adobe's motion to dismiss Count Five of the amended counterclaims to the extent it is supported by Norwood's defamation, false light, and/or business disparagement claims. Count Five of the amended counterclaims is DISMISSED with prejudice to the extent it is based on an alleged violation of the federal Copyright Act or alleged anticompetitive acts.

**IT IS SO ORDERED.**

Dated: July 6, 2011

_____
SUSAN ILLSTON
United States District Judge

United States District Court
For the Northern District of California